W. M. AINSWORTH ET AL. v. BOARD OF SUPERVISORS OF
COPIAH COUNTY.

[59 South. 885.]

1. COUNTIES. *Issuance of bonds. Power of commissioners.* Laws 1910,
    chapter 149.

    Under Laws 1910, chapter 149, providing for the issuance of
    highway bonds and the appointment of road commissioners,
    when the commissioners have once "fixed" an amount of bonds
    to be issued and this amount has been approved by the board of
    supervisors the power of the commissioners is not exhausted.

2. SAME.

    The only limitation upon the power of the commissioners and
    the board of supervisors in this respect is that they cannot
    issue bonds in excess of the maximum allowed by law. Within
    this limitation they may "fix" the amount of bonds to be issued.
    as many times as it may become necessary so to do.

APPEAL from the chancery court of Copiah county..
HON. G. G. LYELL, Chancellor.

Suit by W. M. Ainsworth and others against the board
of supervisors of Copiah county. From a judgment for
defendant, plaintiff appeals.

Acting under chapter 149 of the Laws of Mississippi
of 1910, the board of supervisors of Copiah county, a
petition having been presented to them as provided by
section 2 of said act, declared district No. 1 of said
county to be under the provisions of the act, and pub-
lished a notice of intention to issue "bonds of said super-
visor's district No. 1, of Copiah county, in an amount
not to exceed ten per centum of the assessed value of
all the taxable property of said district, the amount with-
in this limit to be fixed by the commissioners of said dis-
trict to be elected by the board of supervisors." It
was further provided that an opportunity was given for
a protest against the issuance of said bonds, but unless

a counter petition was presented, the bonds would be issued without an election.

There was a counter petition, and an election was ordered which carried in favor of the issuance of the bonds. Thereafter the board met and selected three commissioners, and these commissioners recommended to the board the issuance of seventy-five thousand dollars of bonds, and this amount of bonds was issued. There is no question raised as to the validity of this issue. Afterwards the road commissioners recommended to the board of supervisors that the amount was not sufficient to carry out the plans for building roads of the district, and recommended to the board the issuance of an additional seventy-five thousand dollars of bonds. The board of supervisors thereupon ordered an additional seventy-five thousand dollars of road bonds of said district No. 1 to be issued, the order reciting that said sum, together with all other outstanding bonds of said district, was less than ten per centum of the valuation of the taxable property of said district.

This suit was brought to enjoin the issuance of this additional seventy-five thousand dollars of bonds upon the idea that the board of supervisors had exhausted its power when it first fixed the amount at seventy-five thousand dollars; that it could not, having so fixed the amount, then, at a subsequent meeting, issue additional bonds. Section 3, ch. 149, Laws 1910, contains the following provision: "That the returns of such election shall be canvassed by the election commissioners of the county, and the result certified by the commissioners to the board of supervisors at their next regular meeting; and should the result of such election show that it has carried in favor of the issuance of bonds by a majority vote of those participating therein, or if there be no election, then it shall be the duty of the board of supervisors to issue the bonds of such supervisor's districts, in an amount not to exceed ten per centum of the as-

sessed value of all the taxable property of such district or districts, the amount within this limit to be fixed by the commissioners hereinafter provided for, subject to the approval of the board of supervisors, and such bonds to be issued and sold either all at one time, or in installments from time to time, as funds are needed for the construction of such highway or highways, in the discretion of such commissioners, and the board of supervisors.''

The trial court, upon the hearing, dismissed appellant's petition, and they appeal.

*R. H. & J. H. Thompson,* for appellant.

Nothing is better settled in the law of public bonds than that an overissue thereof is void, even in the hands of subsequent purchasers without actual notice, and if our construction of the statute be correct, the proposed additional issue of bonds involved in this case would clearly be an overissue and void.

The result of all this is that we come back to the question, what do the words, ''the amount within this limit to be fixed by the commissioners thereinafter provided for, subject to the approval of the board of supervisors'' mean? If any meaning whatever can be given them, it is this; the law fixed a maximum beyond which bonds could not be issued under any circumstances, and the maximum fixed was ten per centum of the assessed value of the taxable property in the district. Is this the only limitation on the amount of bonds to be issued? We think not, because the statute proceeds at once to add, ''the amount within this limit to be fixed, etc.'' Does this not impose a duty upon the commissioners, with the approval of the board of supervisors, to fix the amount of bonds to be issued? Certainly the words quoted have this effect. These words do not mean anything else in our judgment and we are confirmed in this opinion from the fact that the words in question are followed by these

words, "such bonds to be issued and sold either all at one time or in installments from time to time as funds are needed." The use of the words last quoted preclude the idea that the words preceding them are to be given the exact meaning that they themselves have. It would be singular indeed for one clause of a sentence to be held to mean exactly the same thing as another clause in the same sentence, when the words are so variant and when they can reasonably be given a different meaning. The words of the statute upon which our contention is based, unless they are given, contrary to all rules of construction, the same meaning as the phrase next after them in the sentence, require that the commissioners shall fix the amount of the bonds, with the approval of the board of supervisors, before any bonds whatever are issued, and that is exactly what was done in this case.

It cannot be justly claimed that the election authorized the issuance of bonds up to the maximum limit, because to so affirm is to state only a part of the truth; the election authorized the issuance of the bonds up to that limit only in case the road commissioners, with the approval of the board of supervisors, fixed the amount to be issued in a sum equal to the maximum limit. The voters relied upon the judgment of the commissioners to be named and of the board of supervisors to fix the amount within the maximum limit and further relied upon the order of date November 11, 1910, naming seventy-five thousand dollars as the amount to be issued. That judgment was exercised in this case, presumably in exact accordance with the wishes of the voters themselves, and in its nature partakes somewhat of the character of a contract with them.

It is not a fair construction of a statute to strike out any of its terms needlessly, nor is it a fair construction to make two clauses of the same sentence mean the same thing, when one is not a manifest repetition of the other.

Tell us, please, what the words, "amount within this limit to be fixed by the commissioners hereinafter provided for, subject to the approval of the supervisors," mean. Do not strike them from the statute and do not assume that they mean the same thing as the words next following after them, since they are not mere repetitions.

*J. S. Sexton,* for appellee.

I insist that the order of the board of supervisors, fixing the original bond issue at seventy-five thousand dollars under the advice of the commissioners, was an interlocutory order and simply constituted the beginning of the operation of the legislative scheme provided for by the statute under consideration.

It will be seen by reference to the order of the board of supervisors, marked "Exhibit I" in the record, that it never occurred to the board, as stated in the order, that "in ordering the issuance of the original seventy-five thousand dollars of bonds of said district it was exhausting its power to provide funds," etc., and it certainly never could have so occurred to the board, because by reference to the report made by the commissioners, under date January 5, 1911, which is found in Exhibit "F" in the record, it will be seen that they state, "We have made some inquiry and estimate the cost of constructing said roads and we believe it will be necessary to expend approximately the sum of seventy-five thousand dollars in so constructing the said roads." Thus it appears that the commissioners had no definite idea in the outset of the total cost of the construction of the roads, and only made an approximate estimate of the amount of bonds necessary to be issued, and the board approved and ratified their report and issued the amount of bonds then recommended.

Authorities upon the identical question are scarce, and indeed I have not been able to find anything which ex-

actly reaches the question. The case of *Chisholm* v. *Montgomery,* 5 Fed. Cas.,-No. 2886, 2 Woods, 584, is authority for the proposition. that "where a municipality is authorized by a special act to borrow a specified sum of money and issue its bonds therefor, and the money is borrowed and the bonds issued accordingly, the power is thereby exhausted," but that does not touch the case in point.

The case of *Farr* v. *Grand Rapids,* 112 Mich. 99, is much nearer in point, and in this case it is held that where the existence of a power is necessary to the exercise of a function which the municipality is authorized to perform that power will be implied. I do not think it is necessary to insist upon the power exercised in this case as an implied power, because I think it is contained in the terms of the statute; but if it were necessary, this authority would be in point, because it is absolutely impossible to exercise the functions which are imposed upon the road commissioners and board of supervisors in the districts operating under the act of 1910 without the exercise of the discretion provided in section 3 thereof, as the necessities of the case may require, always remembering the ten per centum limitation.

By reference to 28 Cyc. 1584, we find that, "Where municipal bonds have already been issued to the amount authorized by law, all bonds issued thereafter are void; but where the limit has not been previously reached, bonds which, in the aggregate, exceed the limit are void only to the extent of the excessive issue." By reference to page 1592 of the same volume, you will find this statement of the law: "Where a proposition to issue bonds has been submitted and acted upon favorably by the voters of the municipality, the executive officers thereof cannot refuse to issue the bonds, nor may they vary the terms and conditions of the submission." And authorities are cited in support of the proposition.

SMITH, C. J., delivered the opinion of the court.

The contention of appellants, in effect, is that when the commissioners have once "fixed" an amount of bonds to be issued, and this amount has been approved by the board of supervisors, the power of the commissioners in this respect is exhausted, and, even though the money realized from the sale of the bonds is insufficient to meet the expense of the work undertaken, they cannot thereafter authorize the issuance of additional bonds.

There is nothing in the statute to warrant this interpretation thereof. The only limitation upon the power of the commissioners and board of supervisors in this respect is that they cannot issue bonds in excess of the maximum amount allowed by law. Within this limitation they may "fix" the amount of bonds to be issued as many times as it may become necessary so to do.

*Affirmed.*